UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEROMY MEDOVICH, | ) | CASE NO. 4:21-cv-1020 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DURST ROOFING & SIDING, LLC, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Now before the Court is the parties' Joint Motion to Approve Settlement Agreement in this action alleging violations of federal and state wage laws. (Doc. No. 11.) Because the Court finds that the settlement represents a fair resolution of plaintiff's claims, the joint motion is granted and the settlement is approved.

### I. BACKGROUND

According to the complaint, plaintiff Jeromy Medovich ("Medovich") was employed by defendant Durst Roofing & Siding, LLC ("Durst Roofing") as a salaried foreman. (Doc. No. 1 ¶¶ 1–14.) As the foreman, Medovich was ordered by defendant Dustin Durst ("Durst") to edit the time sheets of hourly employees to reflect no greater than forty (40) hours per week, pay the hourly employees in cash to avoid payroll taxes, and to pay overtime as a flat cash payment rather than time and one half; Medovich came to believe that Durst was not paying hourly employees for all overtime hours worked. (*Id.* ¶¶ 18–24.)

The hourly employees complained to Medovich that they were not being properly paid for overtime. Medovich complained to Durst that he was worried Durst Roofing's overtime practices were illegal and informed Durst that he would no longer edit employee time entries. (*Id.* ¶¶ 25–27.) After a confrontation with Durst over this issue, Medovich volunteered to be demoted to an hourly worker "if it meant no longer being responsible for alter[ing] employee's time cards and underpaying overtime." (*Id.* ¶¶ 30–31.) Durst and Medovich agreed that beginning on May 20, 2020, Medovich would start work as an hourly employee at $25.00 per hour. Medovich worked approximately thirty (30) hours between May 20 and May 24, 2020 as an hourly employee, and then was terminated by Durst. Medovich alleges that he was terminated because he complained to Durst about defendants' unlawful overtime practices. (*Id.* ¶¶ 32–36.) Defendants refused to pay Medovich for his hourly work between May 20 and 24, stating that his final paycheck was being withheld due to damage to a truck Medovich had operated in February 2020 that was involved in an accident. (*Id.* ¶¶ 37–39.)

Based upon these facts, Medovich alleges that defendants' conduct violated the Fair Labor Standards Act, 29 U.S.C. § 207 (Count I), Ohio's Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03 et seq. (Count II), and Ohio's prompt payment Act (Ohio Rev. Code § 4113.51 (Count III) and, in addition, that defendants breached an implied contract with Medovich (Count IV) and were unjustly enriched by withholding his pay (Count V) which Medovich claims he is entitled to recover under the common law remedy of quantum meruit (Count VI). Lastly, Medovich claims that defendant retaliated against him in violation of 29 U.S.C. § 215(A)(3) (Count VII) and Article II, Section 34A, of the Ohio Constitution (Count

VIII) for complaining to Durst about Durst Roofing's alleged unlawful overtime practices. Defendants deny Medovich's claims. (*See* Doc. No. 8.)

The parties have reached a settlement that resolves all Medovich's claims, and filed a joint motion seeking Court approval of the settlement. (Doc. No. 11.)

## II. APPLICABLE LAW

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cty. Gov.*, No. 06-cv-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id*. (quoting 29 U.S.C. § 202).

The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)*; Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Foods, Inc.*, 679 F.2d at 1353. The second exception, applicable here, encompasses instances in which federal district courts approve settlement of suits brought in federal district court pursuant to § 16(b) of the FLSA. *Id*.

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and

3

overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, & Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition, where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

### III. ANALYSIS

In this case, defendants "vigorously deny" plaintiff's allegations and the Court finds that the parties' divergent views of the facts and the law present a bona fide dispute that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury. (*See* Doc. Nos. 1, 8; Doc. No. 11-1 at 1.[1]) Having reviewed the terms of the settlement agreement, the Court finds the settlement represents a fair and reasonable resolution of these bona fide disputes that was the result of arms-length negotiations between parties represented by able counsel after an investigation of the facts by plaintiff's counsel and a determination that the

---

[1] All references to page numbers are to the consecutive page numbers assigned to each individual document by the Court's electronic filing system.

settlement is in plaintiff's best interest. (*See* Doc. 11-1 ¶ 2.) Thus, the Court finds no risk of fraud or collusion.

With respect to the monetary award to plaintiff, the Court notes that the payments represent all, or substantially all, of the unpaid wages alleged by Medovich. In addition, the settlement compensates Medovich for his other claims, including any claims for non-economic damages. (*See id.* ¶ 1.) As for the award of attorney fees to plaintiff's counsel, the Court finds that the award is reasonable, taking into consideration the fact that a settlement was reached early in the litigation and the successful outcome providing relief to plaintiff. While the Court is not in a position to assess the likelihood of success on the merits, as the case was still in the early stages when settlement was reached, the Court finds that the other relevant factors weigh in favor of approving the settlement.

## IV. CONCLUSION

For all the foregoing reasons, the Court approves the settlement. The claims in plaintiff's complaint are dismissed with prejudice. This case is closed.

**IT IS SO ORDERED**.

Dated: October 7, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**